Preddie v. Bartholomew School Corporation. Mr. Masur, Council Belcher, Judges Williams, Flom, Ripple, and esteemed jurist Nakamichi Inono, Ohio Gazimus. My name is J.D. Mazur. I represent Terrence Preddie. Since this case was brought, he has received a master's of divinity degree and a kidney transplant. So he's had a lot go on in his life. The claims that he brought against Bartholomew County Schools Corporation arise under the Family Medical Leave Act, the Americans with Disabilities Act, Title 7 and 42 U.S.C. section 1981. Law in these areas is pretty well established and as the court will note from the culture, we are both prone to acknowledge each other's accurate recitations of the ethical law. Unfortunately what appears in this case are substantial deviations from the lower court's decision from the federal court standards, decision-making standards, which are required to be followed on summary judgment and I'll address these in not a particular order because I think each of them are important. The first that I'll address is the lower courts opting to rely principally on a fact-not-of record to the effect that Mr. Reverend Preddie's attendance made him not qualify. This would cut across all of his claims. Dr. DeClew, in her deposition, she was the 30B6 witness attested to the attendance record, which is Exhibit 1 to her deposition and docket numbers 405 to 407, which show he missed about 21 days, maybe seven weeks. That's well under the 12-week threshold of the Family Medical Leave Act limitation. The finding that attendance was an essential function of the job in the school context was not something that Mr. Belcher argued because it's not something that his school corporation would contend because, as we showed, there were between 270 and 300 white elementary school teachers. It was exclusively white except for Mr. Preddie for a period of approximately 10 years and that's shown in Exhibit 9 to the 30B6 witness. Again, that's docket number 372. There were approximately 140 leaves, virtually unrestricted leaves, ranging in from 70 days to over two years time to the white employees and the district court did not even acknowledge the district court decision, did not even acknowledge the fact that Bartholomew County, much like every other school district in the United States, uses situations arise. Now, again, the district court decision may have been the product of some over-enthusiastic staff persons viewing its own set of facts but those facts aren't in the record and no mention was made in the district court decision of the facts that it was bound and true most favorably to Mr. Preddie. Some of those facts included that he was left in the months after Clancy, Principal Clancy, determined that he was so toxic to the educational environment of his students that he had to be removed. No mention was made in the district court decision that there was no remediation necessary for any of the students in his classroom. Not a single minute of tutorial time was necessary for any of those kids nor did they find that, nor did the district court acknowledge that there was no fall-off, if you will, the ISTEP test scores of those students, the standardized test scores. What we have here in this case is the district court fabricating its own version of the facts which doesn't have any record support and that should be concerning to this. The next thing that needs to be addressed, I believe, by this court and highlighted in the lower court's faulty decision-making process is that there is no pretext analysis. The 30th B6 witness, DeClew, we pinpointed on pages 77 to 80 of her deposition that of the eight issues that Clancy listed as Preddie's rationale for removal, being kicked to the curb as the only African-American elementary school teacher ever at Bartholomew County schools in the last 10 years. The eight issues, we asked her to specify, what was it that was complained about by parents? What was repeatedly complained about? She said nothing. She had no evidence at all. So she acknowledged that there was no substantial basis for any of the rationales offered except for the attendance issue and the attendance issue is where we showed there was disparate treatment with regard to hundreds and hundreds of similarly situated white colleagues in the elementary schools of Bartholomew County. Now it's interesting to note that Dr. DeClew, the 30 B6 witness, even enticed Mr. Preddie to come back with her Exhibit 18. She said Bartholomew doesn't want to lose you. This was at the end of the 2009-2010 school year. Mr. Preddie was terminated at the end of the 2010-2011 school year. Plus, like I said, the school system left him in the classroom for months on end after they allegedly determined, after Clancy allegedly determined he was toxic to the Do we see in this decision that was a problem that shows that it was perhaps freelance, ad hoc, haphazard kind of random decision is not only did the lower court adopt its own version of the facts that attendance, unlike all the white elementary school teachers for Mr. Preddie, was an essential function of the job that could not be accommodated by the use of substitute teachers. The lower court also used the ultra-various approach of disregarding the law of the case. In this case, the lower court said we're gonna have summary judgment by August 18th and she extended, the court extended the discovery deadline to September 18th, but the court then disregarded its own law of the case saying oh well just because you filed your motion for summary judgment a month late, we're not going to pay any attention to that. We're going to allow you to provide a summary judgment motion, which in this case is important because Mr. Preddie, Reverend Preddie, has undergone a substantial health concern and that concern has resulted in his having to have a transplant. He would have been entitled to the disability insurance proceeds that would have been available to him had the school district not exited him on faulty grounds. Mr. Commissioner, may I invite your attention just for a minute to two of the counts in your complaint. One, the interference with the FMLA rights. What is your understanding of what you had to establish in order to make out that cause of action? Well, the facts that we were able to adduce, in which we did adduce, in which for some reason the district court found there was a conflict, was Mr. Preddie took leave time. He was hospitalized March, at the most recent time, March 3rd and 4th in 2011. Five days, five business days after he came back, he was told he was going to be terminated, among the reasons for which was the, his taking the time off. He could have, had he not been told he was going to be terminated for taking leave time, ostensibly applied for family medical leave after that, after that, 15 days after he came back because it was obviously acute, serious medical condition. But when the law doesn't require him to then apply for family medical leave time when he's being told he would be denied it. And the evidence showed that he was told not only by... And what was the remedy if you were to make out that particular cause of action? The remedy for that cause of action would be for his non-termination, if you will, for an illegal reason, which is his taking the leave time. Now at the end of that school year, during the ensuing summers when he developed really acute symptoms that necessitated his to take his need to get what would be disability insurance, if you will, because of the debilitating effects of the diabetes that he was suffering from. Now one thing that the opposing counsel does mention, which I think I need to address, is that I should have brought these things up earlier. Well, I can't address errors of the court before they occur. And that's why we are addressing them to this court. And I would also suggest that the other thing that is a bit of a problem is the court finding a conflict between Mr. Prey's testimony during his deposition and his attesting in his affidavit that he was told not to take family medical leave time by Clancy and the prior principal. Well, there's no conflict there. To say that he did as he was told and he didn't ask for leave time is not inconsistent in the least. Thank you judges. Thank you. Mr. Belcher. Counsel. May it please the court. My name is Tom Belcher. I'm here today on behalf of the school district. I will be brief. We briefed this extensively. I know you've all read it. Yes, and can you get to the FMLA claim? I certainly can. Because those two those two claims are the ones that trouble me the most. The school district knew he was taking time off to deal with his son or his own medical issues. That kind of leave is protected. He was fired because he took protected leave. His deposition testimony shows, you know, he was fired because of absence. And Clancy told him, at least he alleges, that he would be fired for taking protected leave. And so that's why he chose not to. I understand that position, Your Honor. We disagree with it completely. How can you, how can Mr. Preddy establish his FMLA interference claim if he never provides sufficient notice of his intent to take leave? He doesn't, his own deposition testimony says he did not do that. He was asked specifically if he ever requested FMLA leave. He said no. There's testimony from Dr. Clancy that after Mr. Preddy used up his 18 contract days of paid vacation, that she had the conversation with him that he could apply for FMLA leave. She told him what the application process was. She gave him the name of the person to apply for FMLA leave, and he chose not to do that. So how can we have interfered with his FMLA claim if he voluntarily chose not to apply for it? With all due respect, Your Honor, I don't think that the reason that he chose not to apply is important. The fact that he chose not to apply is important. If he would have applied, we'd be here with a different set of facts. But he was well aware of what the FMLA provided for him. His own deposition testimony indicates, as you know, that a prior employment position he had was a manager of a company, and in that capacity he dealt with FMLA leave. So he had personal knowledge of it. The school corporation reminded him of it, told him that he would not get any more paid leave, but he could apply for FMLA leave, and directed him to the name of the person to do it, and he chose not to do it. So that's one of the elements of his FMLA interference claim, his prima facie case. He has to prove that he gave a sufficient notice of his intent to take it, and he didn't. He also, another element that he would have to prove under his prima facie case, is that we denied him FMLA benefits to which he was entitled. And there's no evidence that that happened. Mr. Prey's own deposition testimony is to the contrary. We cited that in our brief. He never requested an accommodation that he didn't get. He never requested time off to attend his disability. The reasons why he didn't do it do not relate to this prima facie case that he must prove to survive summary judgment. And so under the FMLA retaliation claim, he hasn't met his burden of proof on his prima facie case. Did that answer your question, Your Honor? It did. Thank you. So have I addressed the FMLA retaliation and interference claim to your satisfaction, Your Honor? You have. Thank you. The next claim, as you know, let me back up just a little bit, to move to CSA Fodera to teach fifth grade by the principal, Dr. Clancy, when his temporary contract at the prior elementary school expired. He was interviewed for the process, he was hired, started off fine. Trouble soon began. Within three months after he started, complaints were being yielded or being taken by the school corporation from students, from student teachers specifically, and I'll address that. Obviously, it's important that a teacher have adequate lesson plans in place, whether he knows that he's going to be off of work or not. And probably even more important, to plan ahead so that if he is going to be unexpectedly off of work, the student teacher who is then called at the last minute to come in and substitute for him would know where the classroom is and know where the lessons plans are and would be able to take over the class. Well, he had a problem right off the bat with lesson plans. The school put in a plan of action for him to improve, and he failed to improve in spite of that plan of action. He didn't even follow up with the two mentors that school put in place to mentor him to help him with his deficiencies. He talked to one, but he didn't even reach out and talk to the other one, and the one he talked to, he was only with temporarily. So he didn't improve in spite of the school wanting him to improve, giving him ammunition to improve. So the real reason that he was terminated, there was like six of them, but it centers around his job performance. It had absolutely nothing to do with his disability or his son's condition. So on his ADA accommodation claim, he failed to meet his burden of proof on his prima facie case in that as well. The evidence is undisputed that he couldn't perform the essential functions of his job, inspired the fact that we implemented the plan of action to help him improve. There's no evidence to the contrary that he was able to perform. So as the district court properly found, he was not a qualified individual with a disability, and that eliminates both his ADA failure to accommodate claim and his ADA retaliation claim. He can proceed with his retaliation claim under either the direct method of proof or the indirect method. We've discussed both of those in our brief. I would just ask the court to be clear. Fortunately, what lawyers say really isn't evidence, and what's important is what Mr. Pretty said and what the witnesses have said, and that is in record as to these issues. And it's clear that his affidavit is in contradiction to his deposition testimony in many of these regards. So when we come to the ADA retaliation claim, again, he hasn't established that he was a qualified individual with a disability. He also hasn't established that he was engaged in any statutorily protected activity, which is separate from the qualified individual with a disability requirement. He hasn't established that he was satisfactorily performing his job, so he fails under the direct method or the indirect method. When we come to his Title VII and Section 1981 claims, there's no evidence anywhere in the record that race had anything to do with any of these decisions. Mr. Pretty himself, in his affidavit, in his deposition testimony, offers no evidence that race played any role in the school's decision that he couldn't perform the essential functions of his job and that his contract needed to be not renewed. Contrary to that, the evidence, and as Mr. Sewers already mentioned, the assistant noted in her letter to him when she invited him to apply for the job at FADRA that the school corporation didn't want to lose him, and that was true. At the time, that was true. Everybody was pulling for him. That's why the school put in a plan of action to help him progress, and it just didn't work out that way. And I think that the district court's conclusion is probably the most unfortunate, that it didn't work out, that the court's not a super HR department personnel decision maker. The school can make its own decisions for its own reasons as long as they're not discriminatory and or illegal. And there's the undisputed evidence from the school corporation is that Mr. Pretty was unable to carry his burden on at least one element of every one of his claims, and we'd ask the court to affirm the district court's decision. Thank you. Thank you. Mr. Belcher, Mr. Mazur, thank you. No time has been reserved, so the case is taken under advisement and the court will stand in recess.